# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 2966 | **DATE** | 7/28/2000 |
| **CASE TITLE** | MAROBIE-FL.,INC. vs. NATIONAL ASSOCIATION OF FIRE EQUIPMENT DISTRIBUTORS,et al | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   ENTER MEMORANDUM OPINION AND ORDER: Plaintiff's Renewed Motion for Summary Judgment as to the validity of its copyright on Firehouse Clip Art Volume 1 and defendant's Liability for Copyright Infringement is granted [115-1]. Defendant's motions in limine[110-1 and 111-1] are hereby stricken as moot.  Status hearing set for 8/14/00 at 9:30a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | | |
| | Notified counsel by telephone. | | JUL 31 2000 | |
| ✓ | Docketing to mail notices. | | | 128 |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| TBK | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

|  |  |
|---|---|
| MAROBIE-FL., INC. d/b/a GALACTIC SOFTWARE,<br><br>Plaintiff,<br><br>NATIONAL ASSOCIATION OF FIRE EQUIPMENT DISTRIBUTORS and NORTHWEST NEXUS, INC.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

No. 96 C 2966
Judge Ronald A. Guzman

DOCKETED
JUL 3 1 2000

## MEMORANDUM OPINION AND ORDER

Presently before the court is plaintiff Marobie-Fl, Inc. d/b/a Galactic Software's Renewed

Motion for Summary Judgment as to the validity of Plaintiff's copyright on Volume 1 of its

Firehouse Clip Art and defendant's liability for copyright infringement, pursuant to Federal Rule

of Civil Procedure 56.[1]   For the reasons set forth below the motion is granted.

## FACTUAL BACKGROUND

The following facts are undisputed except where otherwise noted.  In September of 1993,

---

[1]This Court will consider the motion, despite Defendant's allegations that there is no new evidence. Judge Gettleman noted that he did not consider such motions untimely given the interlocutory nature of prior rulings. See 8/19/98 Transcript of Proceedings, p.4.  Further, Judge Gettleman was apprized by plaintiff's counsel that summary judgment based on the Corel deposition  would possibly be filed again. See 11/20/98 Transcript.

Plaintiff developed Volume 1 of its "Galactic Software Firehouse Clip Art," a compilation of graphic "clip art" for use by the fire service industry. Computer clip art consists of ready-made disks of black and white or color line art drawings and graphics that a computer user can display on his computer and use as artwork for his own particular use. By March of 1994, Plaintiff developed and released Volumes 2 and 3 of the Firehouse Clip Art.

Plaintiff's President, Arnold B. Green ("Green"), claims authorship of all three Volumes of the Firehouse Clip Art.[2] Green gathered over 800 different diagrams and images from numerous companies and organizations that sent him product catalogs, drawings, photographs and general artwork following requests for information, photographs and diagrams of items of interest to the fire service industry.[3] After gathering the material, Green selected and arranged the images he wanted to use as clip art in his compilations. All three Volumes contain an average of 165 pieces of clip art. Volume 1 contains 168 pieces of clip art, consisting of various fire, safety and hazard warning related images.

Plaintiff applied for three separate copyright registrations with the United States Copyright Office. The Registrar of Copyrights received all three applications, and issued a Certificate of Registration for each Volume, as a compilation of artwork, on March 25, 1996.

The National Association of Fire Equipment Distributors ("NAFED") has a Web page on the World Wide Web. Pursuant to a contract with NAFED, Northwest Nexus( "Northwest") provided a host computer for NAFED's Web Page and the access link, or connection, from

---

[2] Aloysius J. Polanesky authored Volumes 1 and 2 with Green. Green is the sole author of Volume 3.

[3] Green states in his deposition dated 4/10/97 that he had between 50 and 75 different sources.

NAFED's Web Page to Web users. The administrator of NAFED's Web Page placed certain files on the Northwest computer for use on NAFED's Web Page. Once the files were placed on Northwest's computer, the files were available for downloading by Web users visiting NAFED's Web Page. Plaintiff claimed these files contained its copyrighted clip art and filed a claim for copyright infringement and unfair competition. Only those facts pertaining to the infringement claim will be discussed here.

On November 13, 1997, this Court granted Plaintiff's Motion for Partial Summary Judgment, finding that Defendant NAFED directly infringed all three Volumes of Plaintiff's copyrighted worked. Defendant filed a Motion for Reconsideration on December 23, 1997 that was denied on March 12, 1998. On June 11, 1998, Defendant filed a second Motion for Reconsideration, alleging the discovery of new evidence it claimed established that defendant should not be liable for infringement of plaintiff's copyrights. Defendant alleged that plaintiff copied its clip art from Corel Corporation, a non-party, and therefore Volume 1 was not entitled to copyright protection.

On November 20, 1998, this Court denied defendant's motion to reconsider with respect to defendant's challenge on Volumes 2 and 3 but granted the motion as to Volume 1, finding there was a disputed issue as to whether approximately one-third of the images in Volume 1 were the product of infringing conduct, and whether this conduct was pervasive enough to violate the rights Corel Corporation.[4]

Defendant alleges that plaintiff copied its clip art from two Corel compilations, "Corel

---

[4]Plaintiff maintains that 48 images are at issue; Defendant alleges that 54 images are at issue. Only 48 images are attached to the record as plaintiff's Exhibit F.

GALLERY 1.0" and Corel IDRAW 4.0." Each compilation, contains approximately 10,000

images relating to various different topics or subjects. Defendant alleges that plaintiff has

infringed Corel's rights in the individual images at issue and in their compilations and that as a

result, Volume1 is not entitled to copyright protection.[5] Plaintiff denies copying the images from

Corel or any other third party, and further asserts that the individual images at issue are in the

public domain and not subject to copyright individually. Further, plaintiff denies copying the

original elements of Corel's compilation. Plaintiff maintains that Volume 1's copyright as a

compilation is valid as a matter of law and that it is entitled to summary judgment as to the

validity of its copyright in, and defendant's infringement of Volume1. Defendant raises two

arguments in opposition to plaintiff's motion. First Defendant argues that plaintiff has failed to

present any new evidence in support of its motion, rather plaintiff solely relies on its prior

argument that the images in question belong to the public domain. As indicated in Footnote #1 of

this opinion this is not a motion to reconsider governed by Fed. R. Civ. Proc. 60 rather it is

plaintiff's renewed motion for summary judgment on the issue of liability. Defendant's second

---

[5]Defendant also asserts that plaintiff infringed Corel's exclusive right to prepare derivative works. The court will not discuss this claim because a derivative work is not involved here. Derivative works and compilations essentially represent different concepts. Preparation of a derivative work is the exclusive right of the owner of the copyright in the original work. 17 U.S.C. § 106 920. Preparation of compilations is not an exclusive right belonging to the copyright owner, although copying associated with the original selection, coordination, or arrangement of a compilation is an exclusive right of the copyright owner. 17U.S.C. § 106(1). A compilation results from a process of selecting, bringing together, organizing, and arranging previously existing materials of all kinds, regardless of whether the individual items in the material have been or even could have been subject to copyright, without any internal changes in such material. 17 U.S.C. § 101. A derivative work requires a process of recasting, transforming, or adapting on or more preexisting works that must come within the general subject of copyright as defined in section 102 of the Copyright of 1976, regardless of whether the preexisting work was ever copyrighted. *id.* The images in question are not capable of spawning derivative works because they are unprotectable subject matter – familiar symbols and designs and forms of expression dictated solely by functional considerations are part of the public domain and are subject to copyright because they lack even the minimal degree of creativity needed for copyright protection. See *OddzOn Products Inc. v. Oman,* 17 U.S.P.Q.2d 1624,1625 (D.C. Cir. 1991). Thus, the right to prepare derivative work is not involved here.

argument essentially puts forth that plaintiff's copyright on Volume I is invalid because plaintiff

copied 54 of its images from Corel. In particular, Defendant argues that Corel's selection of fire

related images were the images copied. Defendant claims that Green failed to present the source

materials from which the images in question came.

## DISCUSSION

### I    LEGAL STANDARD

A moving party is entitled to summary judgment under Rule 56 when the pleadings,

depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,

show there is no genuine issue of material fact and that the moving party is entitled to judgment as

a matter of law. Fed. R. Civ. P. 56(c) *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S. Ct.

2548, 2552, 91 L.Ed.2d 265 (1986). *Unterreiner v. Volkswagen of America, Inc.,* 8 F.3d

1206,1209 (7th Cir 1993). Once the movant has met its burden, the non-moving party must go

beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R.

Civ. P. 56(e); *Becker v. Tenenbaum-Hill Assoc., Inc.,* 914 F.2d 107, 110 (7th Cir. 1990). The

court considers the record as a whole and draws all reasonable inferences in the light most

favorable to the party opposing the motion. *Fisher v. Transco Services-Milwaukee, Inc.,* 979 F.2d

1239, 1242 (7th Cir. 1992).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury

could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U. S. 242,

248, 106 S. Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). However, the nonmoving party "must do

more than simply show that there is some metaphysical doubt as to the material facts."

*Matsushita Electric Industrial Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986). " The mere existence of a scintilla of evidence in support of the nonmoving party's position will be insufficient; there must be evidence in which a jury could reasonably find for the nonmoving party." *Anderson*, 477 U.S. at 252, 106 S. Ct. at 2512. In a copyright infringement case, summary judgement has been granted where there is no genuine issue of material fact regarding public domain and the lack of originality required for a work to be entitled to copyright protection. See, i.e. *Wilson v. Electro Marine System*, 915 F.2d 1110, 1117 (7th Cir. 1990); *Sanga Music, Inc. v. EMI Blackwood Music, Inc.*, 55 F.3d 756, 758 (2d. Cir. 1995).

## II.   ANALYSIS

To establish a claim of copyright infringement, a plaintiff must demonstrate: (1) ownership of a valid copyright and (2) "copying" of the original constituent elements of the work. See *Harris Custom Builders, Inc. v. Hoffmeyer*, 92 F.3d 517, 519 (7th Cir. 1996), cert. denied, – U.S.-, 117 S. Ct. 956,136 L. Ed.2d 842 (1997). Violation of any of the exclusive rights of the copyright owner constitutes infringement. 17 U.S.C. §501(a). These exclusive rights include the right to reproduce the work, the right to prepare derivative works based on the work, the right to distribute copies of the work to the public and the right to display the work publicly. 17 U.S.C. §106(1-3), (5).

### A.   PLAINTIFF OBTAINED A COPYRIGHT FOR VOLUME 1

A certificate of registration from the U.S. Register of Copyrights constitutes prima facie evidence of the validity of the copyright and of the facts stated in the certification." 17 U.S.C. §

6

410(c); *Wildlife Express Corp. v. Carol Wright Sales, Inc.* 18 F.3d 502, 507, 30 U.S.P.Q.2d 1140,

1143 (7th Cir. 1994). If the plaintiff produces a certificate of copyright, a rebuttable presumption

of validity exists and the burden shifts to the defendant to prove why the claim of copyright is

invalid. See *Masquerade Novelty v. Unique Indus.*, 912 F.2d 663, 667 (3d Cir. 1990); *Folio*

*Impressions, Inc. v. Byer California,* 937 F. 2d 759, 763, 19 U.S.P.Q 2d 1418 (2d Cir. 1991).

The defendant's burden to rebut the presumption of validity varies depending on the issue

bearing on the validity of the copyright. When "the issue is whether the copyrighted material is

'original,' the presumption of validity will not be overcome unless the defendant offers proof that

the plaintiff copied from other works or other similarly probative evidence as to originality."

*Masquerade Novelty,* 912 F.2d. at 668-69; Melville B. Nimmer and David Nimmer, *Nimmer on*

*Copyrights,* § 12.11[B], at 165-67. Upon defendant's proof of the lack of originality by evidence

that the plaintiff copied from another work, the burden shifts back to the plaintiff to prove

originality. *Masquerade Novelty,* 912 F.2d. at 667.

Plaintiff has presented a copy of the copyright registration certificate for Volume 1 as a

compilation, and it is undisputed that plaintiff is the owner of the copyright to Volume 1. See

*Marobie-FL, Inc. v. National Assoc. of Fire Equipment Distributors and Northwest Nexus, Inc.*

983 F. Supp. 1167, 1173, 45 U.S.P.Q.2d 1236, 1242 (N.D.Ill 1997) (Judge Gettleman). Thus,

plaintiff is entitled to a rebuttable presumption of validity as to its copyright in Volume 1. Unless

a genuine issue of material fact exists with respect to defendant's ability to rebut the presumption

of validity, plaintiff is entitled to summary judgement as to the validity of its copyright in Volume

1 and defendant's infringement of Volume 1. In an attempt to rebut the presumption of validity

and shift the burden back to plaintiff, defendant challenges the originality of Volume 1 by

7

claiming that plaintiff unlawfully copied Corel's "proprietary" images and the original elements of Corel's compilation.

A compilation "is a work formed by the collection and assembling of preexisting materials or of data that are selected, coordinated, or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." 17 U.S.C. § 101. Three distinct elements are required to be met for a work to qualify as a copyrightable compilation:(1) the collection and assembly of preexisting material, facts, or data: (2) the selection, coordination, or arrangement of those materials; and (3) creation, by virtue of the particular selection, coordination, or arrangement of an 'original' work of authorship." *Feist Publications, Inc. v. Rural Tel. Serv. Inc.,* 499 U.S. 340,111 S. Ct.1282, 1293,113 L.Ed.2d 358 (1991); See also *Mid America Title Co. v. Kirk,* 59 F.3d 719, 720 (7th Cir. 1995).

Selection implies the exercise of judgment in choosing which material from a given body of data to include in a publication. *Key Publications, Inc. v. Chinatown Today Publishing Enterprises,* Inc. 945 F.2d 509 (2d Cir. 1991). Arrangement "refers to the ordering or grouping of data into lists or categories that go beyond the mere mechanical grouping of data as such, for example, the alphabetical, chronological, or sequential listings of data." Copyright Office, Guidelines for Registration of Fact-Based Compilation 1 (Rev. Oct. 11, 1989).

Originality is the touchstone of copyrightability and in dealing with compilation, the inquiry into originality focuses on the originality in the selection, coordination, or arrangement of the materials. *Feist,* 499 U.S. at 350-51,360. Thus, originality lies in the new arrangement of the facts or data, not in the facts or data themselves. See *Publications International, Ltd. v. Meredith Corporation,* 88 F.3d 473, 480 (7th Cir. 1996); *Rockford Map Publishers v. Directory Services*

*Company of Colorado, Inc.* 768 F.2d. 145, 149 (7th Cir. 1985); *Feist,* 499 U.S. 340, 350, 350-51, 360 (a compilation may contain only facts or other preexisting material or data that are themselves in the public domain, and thus not copyrightable, but remains protectable itself as long as the compilation is the product of the original selection, coordination, or arrangement of those materials); *Apple Barrel Productions, Inc v. R.D. Beard,* 730 F.2d 384, 387-388 (5th Cir. 1984) (copyright protection extends to compilation regardless of whether or not "the material of which it is composed is not copyright able itself or is already subject to a previous copyright"). The originality requirement is not particularly stringent. "A compiler may settle upon a selection or arrangement that others have used; novelty is not required. Originality requires only that the author make the selection or arrangement independently (i.e without copying that selection or arrangement from another work), and that it display some minimal level of creativity." *Feist,* 499 U.S. at 345.

Defendant challenges the originality of Volume 1 by alleging that plaintiff unlawfully copied, and therefore infringed, Corel's right in the individual images at issue and in its compilation. "Not all copying, however, is copyright infringement." *Feist* 499 U.S. at 361. As stated above, to establish unlawful copying, and therefore infringement, two elements must be proven: (1) the ownership of a valid copyright, and (2) copying of the constituent elements of the work that are original. See *Harris Custom Builders Inc.* 952 F.3d at 519.

### a.    The individual images

Initially, defendant has not established standing to enforce Corel's copyright. Furthermore, although, it is undisputed that Corel owns valid copyrights as to Corel GALLERY I.0. and Corel IDRAW4.0 it has not been established that Corel owns a valid copyright in the

specific images in question because they are standard fire, safety, and warning images or signs in the public domain. The right to copy matter in the public domain is based upon Article 1, § 8 of the United States Constitution and the federal copyright laws. Familiar symbols and designs and fragmentary words of phrases and forms of expression dictated solely by functional considerations are part of the public domain and are not subject to copyright because they lack even the minimal degree of creativity needed for copyright protection. See *OddzOn Products Inc. v. Oman*, 17 U.S.P.Q.2d 1624, 1625 (D.C. Cir. 1991) (Registrar's refusal to copyright "KOOSH" ball, formed of floppy spaghetti-like filaments which when freestanding looked like a sphere, upheld due to a lack of a sufficient degree of creative authorship); *Sem-Torq. Inc. v. K-Mart Corporation*, 936 F. 2d 851, 854-855, 19 U.S.P.Q.2d 1219,1222 (6th Cir. 1991) (double-sided signs with yellow backgrounds bearing various legends such as "For Rent" / "For Sale" not copyright able individually or as a set due to a lack of sufficient originality for copyright protection). Where the similarities between two works are limited to "non-protectable elements," there can be no infringement and summary judgment is appropriate. *The Bridgeman Art Library, Ltd. v. Corel Corporation*, 25 F. Supp.2d 421 (S.D.N.Y. 1998). Defendant offers the affidavit of Christopher Van Barr, Corel's General Counsel who attests that at least 54 images from the Galactic Firehouse Clipart Volume I alone appear to be identical to Corel images. Defendant argues since there are only 168 images in Volume 1, approximately 1/3 of plaintiff's images are infringing thus invalidating plaintiff's copyright.

A review of these images reveals that a majority of the images at issue are standard fire,

safety, and warning images or signs in the public domain.[6] They are not entitled to copyright

protection because they are comprised entirely of familiar symbols and words or phrases dictated

by functional and safety considerations. The images in question are standard images endorsed by

the American National Standards Institute ("ANSI") and the International Standards Institute

("ISI"), as well as Occupational Safety and Health Administration ("OSHA") and Department of

Transportation ("DOT") mandated signs, placards, labels, and tags.[7] Defendants argument that

none of the above evidence is from the time period which is relevant to the present dispute is

insufficient as a matter of fact. The ANSI standards demonstrate the 1998 "updates' made to the

ANSI standards as they existed in 1991, as well as a discussion of the 1991 updates from 1979.

The ISI standards for Safety Colours and Safety Signs is dated 1984, well prior to Corel's 1992

publication. The Seton catalog presented by Galatic is dated "Summer/Fall 1993", which is the

time Galactic created its clip art. Similarly, DOT and OSHA regulations relating to such signs

and labels date back to at least 1979.

Furthermore, Corel does not claim rights in the images in question, nor could Corel have

received copyrights in the images since they are in the public domain.[8] Corel's General Counsel

admits in paragraph 5 of his affidavit that many of the images "are commonly used and well

---

[6] The only images that are not standard fire or safety signs or symbols are the fire engine image and the other fire apparatus images. These were obtained from a number of fire equipment and apparatus companies whose trademark plaintiff acknowledge on p. 50 of the User's Manuel sold with each volume of Firehouse Clip Art.

[7] For a detailed pedigree of each image, see plaintiff's Memorandum of Law in Support of its Renewed Motion for Summary Judgment, at 10-13.

[8] Corel's legal counsel, Christopher Van Barr is not aware of any U.S. or Canadian registrations for either Corel gallery 1.0 or CorelDRAW 4.0. The only evidence of a registration exists for CorelDRAW 3.0 with the Canadian Intellectual Property Office in 1994 and exists for the work as a compilation, and not for the individual images contained therein.

known safety signages which individually may or may not be, in the public domain." Clearly defendant has failed to raise an issue of fact in this regard. Thus, it cannot be concluded that plaintiff infringed Corel's copyright with respect to these images even if plaintiff did in fact copy them from Corel's compilation.

## b. The compilations

Even if the images were copyrightable, to prove infringement, defendant must prove that plaintiff actually copied its images and that "the copying is illegal because a substantial similarity exists between the defendant's work and the protectible elements of the plaintiff's work. *Streetwise Maps, Inc. v. Vandam, Inc.*, 159 F. 3d 739, 746-47 (2d Cir. 1998). Where the compilation author adds no original expression but rather lets the facts speak for themselves, the expressive element is more elusive. *Feist*, 499 U.S. 340,348,118 S. Ct. 1282, 1289. The compilation author typically chooses which facts to include, in what order to place them, and how to arrange the collected data so that they may be used effectively by readers. These choices as to selection and arrangement, so long as they are made independently by the compiler and entail a minimal degree of creativity, are sufficiently original that Congress may protect such compilations through the copyright laws. *Id.* However, not every such compilation or decision on selection or arrangement is sufficiently creative to be protected. No matter how original the format, however, the facts themselves do not became original through association. *Id.* Citing *Patterson & Joyce 776.* Thus, it is the copying of the "principles guiding that selection" of the work, and not the amount of copying, that is critical to the finding of infringement. *Id; Nester's Map & Guide Corp. v. Hagstrom Map Co.,* 796 F.Supp. 729 (E.D.N.Y. 1992) ("*Key Publications* does not stand for the proposition that copying of copyrighted material is proper so long as the

copying is done in moderation. Nor can a plagiarist excuse the wrong by showing how much of the copied work he did not pirate"). Thus defendant must raise a genuine issue of fact as to the selectivity and arrangement of the images in question to effectively oppose plaintiff's motion for summary judgment.

The only way in which defendant can rebut the presumption of validity and originality of Volume 1 is to raise a genuine issue of fact that images in question are sufficiently original to not be considered in the public domain or that plaintiff copied the principles guiding the original selection used in Corel's compilations. Defendant has failed to raise issues of facts on both grounds. It is undisputed that plaintiff's President, Green, collected over 800 different existing fire, safety, and hazard warning images from 50-75 different companies and organizations. Of these 800 images, he assembled Volume 1 of the Firehouse Clip Art series by selecting and arranging a grouping of 168 images. In assembling his volumes of clip art, Green selected images he thought would be of most interest to the fire industry, given his experience as a volunteer firefighter. Green testified in his deposition that he personally chose the images he wanted to use in the compilation, scanned them into his hard drive and then edited and colorized each image. He then arranged the images, choosing names for the images and ordering them in a manner that the thought would make it easier for the end users, firefighters, to identify the images for their particular use. This testimony is indicative of Green's independent thought and creativity in the selection as well as the arrangement of the images to used in Volume 1.[9]

---

[9] Defendant mistakenly seems to think that the Court must fail to find originality given that Green cannot produce every single source used to assemble the compilation. In order to prove originality, the Court only needs to find that the plaintiff exercised some modicum of creativity in the selection, coordination, or arrangement of preexisting materials and needn't examine, step by step, the process by which plaintiff created the work.

Further, Corel's 10,000 image compilations of clip art are arranged in broad categories of groupings. Groupings cover everything from cartoonish images of celebrities ("Portraits") to the different flags of nation ("Flag"). The groupings are arranged in alphabetical order and not according to how they may be used; thus, for example, "Fantasy" is followed by "Fire." Further, the grouping defendant refers to labeled "Fire" are composed of a seemingly random assortment of images related to the fire industry and the groupings labeled "Signs" are an even broader assortment of signs relating to warning for all types of situations beyond those concerning the fire industry. In contrast, plaintiff's Volume of Firehouse Clip Art was arranged by Green to be easily used. Thus, ambulances and fire truck images are grouped together and named according to how they are known in the industry and then arranged alphabetically within the grouping; tools and equipment used by fireman are also grouped together and then organized alphabetically within the grouping. The same is true for the warning signs, crests, and images of foreman in action that appear in Volume 1.

Defendant has failed to show substantial similarity between the principles guiding the original selection of the compilations and, therefore, has failed to raise genuine issues of fact as to plaintiff's alleged infringement of Corel's compilations. Thus, the presumption of validity and originality of Volume1 has not been rebutted. Plaintiff's Volume 1 is an original selection and arrangement of preexisting material and plaintiff's copyright in the compilation is entitled to a presumption of validity.

Because there are no genuine issues of material fact with respect to defendant's challenges to the originality of Volume 1, plaintiff is entitled to summary judgment as to the validity of its copyright in Volume 1.

14

## B. DEFENDANT COPIED THE ORIGINAL CONSTITUENT ELEMENTS OF VOLUME 1

This court has already decided that the defendant directly infringed plaintiff's copyright in Volume 1 by violating plaintiff's exclusive rights of reproduction and distribution. See *Marobie-Fl, Inc.* 983 F. Supp. at 1173.[10] The rule of the law of the case provides that where an issue has been litigated and decided, a court's unreversed decision on a question of law or fact settles that question for all subsequent stages of the suit. *McDonald's Corp. v. Vittorio Ricci* Chicago, *Inc.,* 466 N.E.2d 1116 (1984). Thus, plaintiff is entitled to summary judgment as to defendant's infringement of Volume 1 as well.

## CONCLUSION

For the foregoing reasons, plaintiff's Renewed Motion for Summary Judgment as to the validity of its copyright on Firehouse Clip Art Volume 1 and defendant's Liability for Copyright

---

[10] This court will not address defendant's attempt to resurrect the defenses of unclean hands, fraud on the Copyright Office, and estoppel, as these were previously briefed and argued by the parties in connection with defendant's second Motion for Reconsideration and rejected by this court on August 19, 1998. The rule of the law of the case provides that where an issue has been litigated and decided, a court's unreversed decision on a question of law or fact settles that question for all subsequent stages of the suit. *McDonald's Corp.,* 446 N.E.2d at 1116. Defendant cannot assert the defense of unclean hands or attempt to avoid liability for its infringement based upon its allegation that plaintiff infringed Corel's rights. Further, defendant has failed to prove that plaintiff infringed Corel's rights. Defendant cannot reassert the claim that plaintiff committed fraud on the Copyright office as this Court has already ruled plaintiff made the appropriate disclosures in its copyright applications and that its copyright is presumed valid. Further, defendant cannot reassert that plaintiff should be stopped from arguing the individual images are in the public domain. Plaintiff has never claimed a proprietary interest in these images. Further, nowhere in his deposition or declaration does Green claim ownership or creation of the individual images - his " Pixel by pixel" comments refer to his editing of existing images he gathered and are an attempt to show that he put original thought and creative effort into the creation of the compilation.

Infringement is granted (#115-1). Defendant's motions in limine (#110-1 and #111-1) are hereby

stricken as moot.

**SO ORDERED**

ENTERED: *July 28, 2000*

*Ronald A. Guzman*

**HON. RONALD A. GUZMAN**
**United States Judge**