# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 2966 | **DATE** | 4/3/2001 |
| **CASE TITLE** | MAROBIE-FL, INC. vs. NATIONAL ASSOCIATION OF FIRE, et al | | |

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**MOTION:**

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]   Enter memorandum opinion and order: Plaintiff's motion to exclude the testimony of Jerry Saperstein is granted. Final pretrial conference set for 5/30/01 at 2:00 p.m. Jury trial set for 7/16/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | Document Number |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | |
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | 4/4/01 | **132** |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | C.S. | |
| | Mail AO 450 form. | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | |
| CG | courtroom deputy's initials | | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**DOCKETED**

APR 0 4 2001

| | |
|---|---|
| Marobie-Fl, Inc. | ) |
| | ) |
| | ) |
| | ) No. 96-CV-2966 |
| Plaintiff, | ) |
| | ) |
| v. | ) Judge Ronald A. Guzmán |
| | ) |
| National Association of Fire, | ) |
| Fire Equipment Distributors and | ) |
| Northwest Nexus | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff moves to exclude the testimony of defendant's proposed expert Jerry
Saperstein ("Saperstein"). Plaintiff first argues that Saperstein proposes to give opinion
testimony as to no less than 29 separate items. Indeed, Saperstein's report seems to
support this accusation. In his report, Saperstein opines, among other things, as to:

- The Hyper Text Transmission Protocol and its use in the World Wide Web,

- How computers communicate on the World Wide Web,

- The rated speeds of communication devices in the World Wide Web in
comparison to actual speeds,

- The speed with which a file is downloaded,

- The likely behavior of users of such communication devices,

- Internet access provider server logs,

- The nature, use and number of automated agents (robots) on the World Wide

1

132

Web,

- The frequency of disconnections likely to be experienced while downloading files,

- The number of people who were equipped to access the World Wide Web during the relevant time period,

- The attitude of persons who try to download files from NAFED's web page -- the likelihood that such persons actually viewed any downloaded files,

- An analysis of Galactic Firehouse Clip Art as a product,

- An analysis of Galactic's marketing strategy,

- The preferences of the fire protection industry for art,

- The originality of the Firehouse Clip Art,

- An economic analysis of the plaintiff's sales figures and of the price elasticity of plaintiff's product.

The list goes on and on. The above opinions cover such broad and diverse areas of expertise as technical electronic software and hardware issues, the behavior patterns of Internet consumers, Internet marketing strategies and, even, the particular qualities of plaintiff's clip art as a consumer product. Mr. Saperstein has also attempted to give opinions as to copyright infringement and validity issues. Mr. Saperstein appears to have no formal technical training or education to qualify him to give expert opinion testimony regarding any of these topics. His formal education extends to three years of college courses and a high school diploma. He claims relevant experience through his company, FontBank, which publishes fonts or typefaces and as a result of having used a variety of analog clip art collections in the course of completing numerous graphic

design projects. He also claims experience as a result of establishing an online electronics store called "Jerry's World, the Electronics Superstore." During the course of this project he claims involvement in investigating the markets for clip art, reviewing dozens of clip art vendors and their wares, negotiating reseller agreements and licenses with them, preparing the visual catalogs of these wares and presenting them for sale in an online venue. He claims to have amassed more than 40,000 clip art images to be distributed electronically through Jerry's World. He is, however, not a trained economist or financial analyst nor does he have any direct experience or training with regards to the fire protection industry. Saperstein claims a significant degree of experience with respect to a variety of computer technology disciplines. In addition, he claims as a result of his activities to be "conversant and familiar with the licensing terms and conditions sought by such entities to protect themselves against allegations of copyright and trademark infringement when licensing such materials from third parties." (Affidavit of Jerry Saperstein, paragraph 6) This is the type of statement one might expect from a legal expert. However, he does not possess formal education in either computer hardware or software, business or economics, accounting (with the exception of a few lower level college courses) or the practice of law.

The most troublesome aspect of Mr. Saperstein's report is his apparent inability to appreciate and understand his own limitations. He fails, for example, to appreciate that experience in negotiating reseller agreements with clip art vendors does not in and of itself qualify him as an expert in the field. Mr. Saperstein appears to be of the

3

opinion that if he has had experience in the course of his business with any issue involved in the case at bar, he is qualified, by virtue of that experience, to give expert testimony. He is mistaken. Similarly, the fact that Mr. Saperstein has experience in selling and supporting products through online venues including the World Wide Web, does not make him an expert on such topics as Hyper Text Transmission Protocol, how computers communicate on the World Wide Web, and the rated speeds of communication devices in the World Wide Web in comparison to actual speeds. Anecdotal experience is not a substitute for training and education - especially in technical fields. Nor is reading computer magazine literature a sufficient basis for testifying as to such technical fields. Mr. Saperstein is not trained in electronics. There is no indication that he understands the technical scientific bases upon which internet communications function. There is no indication that he has any scientific basis for the technical testimony he intends to present. Indeed, Mr. Saperstein may have seen and experienced much that is relevant to the issues before us, and, he may, with the proper foundation, be allowed to testify as to his own first-hand experiences. However, it is another thing altogether to cloak him with the authority of an expert in such diverse fields as he seems to claim and allow him, before the trier of fact, to extrapolate general principles and opinions from those experiences without the benefit of formal training and education.

For example, in paragraphs 9 through 14 of his report Mr. Saperstein gives what appears to be a lucid and informative explanation of how sites on the World Wide

4

Web are hosted. He explains and opines on the use and function of the Hyper Text Transmission Protocol, HTTP servers, Internet Presence Providers, and even about the log function in and extent of use of the Apache HTTP server. The problem is that we have no idea upon what basis of knowledge this proposed testimony is founded. There is no indication that Mr. Saperstein has gained this knowledge in a reliable manner and from reliable sources. It was certainly not part of his formal education or training. He has not received a technical education regarding the functioning of the Internet. He is not educated in the scientific principles upon which internet communications rely. He is not a trained programmer. As far as we know he was not the creator of the Apache Web server. There is no indication as to how he knows what he purports to explain about net servers in general. While it is possible that he has learned a great deal based upon his apparent experience in conducting business matters on the Internet, this is not sufficient for technical testimony. It is one thing to allow a witness to be qualified as an expert on a single narrow topic based purely upon his experience with that topic, it is quite another to allow a businessman, albeit one with substantial experience, to testify as an expert on a wide variety of technical topics including purely technical general software/hardware concepts to specific technical topics about specific programs and Web servers to the number of particular types of Web servers in use today. This court is perfectly capable of reading a magazine article which states that the most popular HTTP server in use today is the Apache server and that it is in use in more than one million installations around the world. This does not, however, provide a sufficient basis for the court to qualify as an expert witness and testify to this as a fact.

5

Yet, when Mr. Saperstein makes the same assertion in his report we are given no source for this knowledge other than his declarations of the vast amounts of business experience he has had in establishing Web sites and conducting business on the Internet. The problem with evaluating this type of testimony is that it is almost impossible to discern which of Mr. Saperstein's opinions are based on sufficient experience to qualify him as an expert, which are based on no more than the type of shallow and incomplete experience that a businessmen might have with many aspects of the business world with which he deals only in certain limited capacities, and which of his opinions are based on sheer speculation.

It appears that with only three years of college and no further scientific or technical education Saperstein lacks training in and fails to employ the type of rigorous scientific methodology and or academic reiquirements which would force him to recognize and therefore to limit his testimony and opinions to those areas and facts as to which he has true in-depth expert knowledge. Instead, Saperstein seems to believe that all of his opinions regarding all aspects of clip art on the Internet, the technical workings of the Internet, consumer habits on the Internet and more, qualify as expert opinions. He is mistaken.

This type of testimony is particularly dangerous because it has a great capacity to confuse the trier of fact. Just as Mr. Saperstein seems unable to separate his own areas of true expertise from those in which he is not an expert, so will the trier of fact

listening to his testimony have similar difficulties. The result may very well be that the trier of fact will give undue weight to testimony which does not merit the "expert" designation. For example, in his deposition testimony it is clear that Mr. Saperstein has undertaken to analyze and evaluate the merchandising and marketing of Galactic Software, including the media in which they advertised, the method of advertising -- the size and content of their ads, their promotional policies and even a comparison to competitors. He even undertook, by conducting his own review of web sites, to evaluate the use and scope of clip art products by entities in the fire protection industry. This is quite an undertaking for person who lacks a degree in marketing or statistics. It is also quite an undertaking for a person who has no knowledge that we are aware of as to the fire protection industry. Mr. Saperstein describes his review of the use of clip art products by the fire protection industry as "visiting a number of web sites that were put up by fire departments, both government-owned if you will and volunteer; by fire fighting fans; by fire fighting or fighter-related equipment manufacturers trying to see what the use and scope of use of the clip art products were." But, how can we be sure that this "visiting a number of web sites" constitutes a valid survey which would yield reliable results? The answer is, of course, that we cannot. In fact the record does not establish that Mr. Saperstein knows what statistically significant results would be, or that he employed *any* scientific methodology whatsoever in doing his survey; or even, for that matter, that he realizes the need to do so when conducting a survey upon which an expert opinion will be based. Insofar as we know Saperstein has no training whatsoever in constructing surveys. Nor, apparently, did he consult with experts in the

7

fire protection industry prior to undertaking this survey and analysis as a true expert

witness would likely have done. He apparently did not consult or even include in his

survey any professional associations in the field. He did not send out questionnaires to

fire departments around the country. Why would local fire departments not be a prime

source of information regarding the demand for this type of clip art? Indeed, there is

no indication that he has the technical expertise to construct a representative sample of

such departments to survey. In fact, he employed no questionnaires at all. Clearly his

review of web sites does not qualify as a survey of a representative sample of potential

consumers of plaintiff's product. He employed no protocol and gives no scientifically

defensible basis for limiting his source of information to a review of web sites and or

magazines. Yet, based upon this research he purports to give an expert opinion.


In his deposition testimony of January 11, 1999 at pages 379 -- 380 when being

questioned about the scientific basis for one of his opinions, Mr. Saperstein states,

"Again, I believe that based on my forty years' experience in marketing that I can

confidently make that statement; and that few people with even a shred of common

sense and a reasonable degree of intelligence would argue it." From this testimony it is

impossible to determine whether his "statement" is based upon specialized knowledge

he has gained from forty years of experience, or from his own common sense and

intelligence. While opinions based upon common sense and intelligence may be

admissible, they would be admissible as lay opinions, not as expert opinions, which

should be based upon specialized knowledge beyond that of the ordinary common sense

and intelligence that the average trier of fact possesses. This testimony highlights the difficulties that allowing Mr. Saperstein's testimony would present. He clearly fails to differentiate between his opinions which are based upon any specialized knowledge he may have which is beyond the average person, and his own common sense personal observations which do not qualify as expert testimony. And so will the trier of fact face similar problems in evaluating his testimony as Mr. Saperstein slips back and forth between expert opinions and his own personal "common sense" opinions. The ultimate result will be that the record will be contaminated with lay opinions cloaked with the heightened weight and prestige of expert testimony - with opinions which may truly be based upon specialized knowledge born of experience side by side with those that have no sufficient scientific or other reliable basis - no basis at all other than Mr. Saperstein's common sense.

At page 373 of the same deposition when queried about the scientific methodology he used in obtaining information from which to arrive at a conclusion Mr. Saperstein states, "In the course of learning, which is something I do every day, I talk to a number of people, particularly people in my business; and we compare notes on how we're achieving market penetration of our products. And over the course of a number of years I had spoken to people who also operate small software publishing companies faced with a lack of capital, a lack of personnel, a lack of time; and we have discussed various methods that we've used to promote sales and their effectiveness...." He goes on at page 379 to explain, "if you asked me today to go out and build a

bibliography of articles and books that say the same thing or to compile a list of marketers who agree with me, fine. You pay me. I will do it just for you. However, this conclusion is based on my experience of forty years in marketing...." A true expert witness, one schooled in rigorous academic and scientific methodology, would have compiled and thoroughly studied such a list of articles and books authored by and published in reliable sources *before* venturing an opinion. Instead, Mr. Saperstein relies upon a series of anecdotal conversations with other businessmen. We have no idea whether such associates were involved in undertakings sufficiently related to the fire protection industry to form an appropriate basis for reaching conclusions which would be relevant to the case at bar. Nor do we know wether they were involved with products sufficiently related to the product at issue to warrant considering their experiences and conclusions. Nor, do we know, without the requisite research of articles and books and surveys which Mr. Sapperstein appears to regard as an afterthought, whether such a group of associates forms a representative sample from which a reliable conclusion may be drawn. Mr. Saperstein obviously believes strongly in the correctness of his conclusions. And, indeed, his conclusions may be correct; but so too might a wild guess. We cannot allow wild guesses to come in as expert testimony on the chance that they may be correct. Nor can we allow Mr. Saperstein's years of experience as an excuse or substitute for an appropriately reliable and verifiable basis for his proposed expert opinions.

For the reasons given above plaintiff's motion to exclude the testimony of

10

Jerry Saperstein is granted.

SO ORDERED

ENTERED:   April 3, 2001

HON.  RONALD A. GUZMÁN
United States Judge

11