# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Ronald A. Guzman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 96 C 2966 | **DATE** | 7/9/2001 |
| **CASE TITLE** | MAROBIE-FL, INC. vs. NATIONAL ASSOCIATION OF FIRE EQUIP | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
   ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Defendant National Association of Fire Equipment Distributors motion to exclude the testimony of plaintiff's proposed expert Dr. Kenneth Lehrer is granted in part and denied in part. Enter Memorandum Opinion and Order.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | |
|---|---|---|---|
| | No notices required, advised in open court. | | Document Number |
| | No notices required. | number of notices | |
| ✓ | Notices mailed by judge's staff. | JUL 16 2001 date docketed | |
| | Notified counsel by telephone. | | |
| | Docketing to mail notices. | docketing deputy initials | 142 |
| | Mail AO 450 form. | 7/9/2001 | |
| | Copy to judge/magistrate judge. | date mailed notice | |
| CG courtroom deputy's initials | | FILED FOR DOCKETING 01 JUL 13 PM 4:36 Date/time received in central Clerk's Office | CG mailing deputy initials |

# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

|   |   |
|---|---|
| Marobie-Fl, Inc. | ) |
|  | ) |
|  | ) No. 96 C 2966 |
| Plaintiff, | ) |
|  | ) |
| v. | ) Judge Ronald A. Guzmán |
|  | ) |
| National Association of Fire | ) |
| Equipment Distributors and | ) |
| Northwest Nexus, | ) |
|  | ) |
| Defendants. | ) |

DOCKETED
JUL 1 6 2001

## MEMORANDUM OPINION AND ORDER

Defendant National Association of Fire Equipment Distributors moves to exclude the testimony of plaintiff's proposed expert Dr. Kenneth Lehrer ("Lehrer"). Lehrer, defendant argues, should be barred from testifying as to his opinion that NAFED's infringement caused lost sales because his entire analysis is based on the following statement:

> [w]hile sales of a specific product could tend to decline after a period of time, the decline in sales of the "Firehouse Clip Art" almost <u>exactly coincides</u> with the posting of said artwork on the Internet by NAFED. Thus, based upon this timing, and no other known exogenous forces in the overall marketplace to cause such a rapid and drastic decline, one can conclude that these two (2) events are very closely related or tied together.

(Lehrer's Report at 13.) Lehrer, according to defendant, does not provide any support for his conclusion that the decrease in clip art sales coincides with NAFED's actions.

1

However, a look at Dr. Lehrer's report indicates that he cites as his source for this conclusion "Source: Deposition of Earl E. Robisheaux, February 26, 1997, pg. 24 and pg. 29 and Response to Plaintiff's Request To Admit, Number 4." Additionally NAFED argues that Dr. Lehrer changed the dates that NAFED supposedly placed the clip art on the Internet from February 1995 to March 21, 1995 in his final report while still claiming that the decline of the Firehouse Clip Art sales almost exactly coincides with the posting of the artwork on the Internet by NAFED. Defendant also points out that Lehrer fails to take into account properly or to explain that before the March 21 date plaintiff's clip art sales were already steadily declining. This "failure to consider the dates of infringement provides another basis as to why Lehrer's methodology is inappropriate. *See Equitable Mortgage Corp. v. Mortgage Guaranty Ins. Corp.*, 791 F. Supp. 620, 626 (S.D. Miss. 1990) (failure to consider relevant factors made Lehrer's expert opinion unsupportable); *Katskee v Nevada Bob's Golf of Nebraska, Inc.*, 238 Neb. 654, 662-63, 472 N.W.2d 372, 379-380 (Neb. 1991) (failure to consider relevant time period)." However, once again, a review of Dr. Lehrer's report discloses that Dr. Lehrer did take into account the tendency of a product to taper off or decline in sales after a period of time. He discounted this phenomenon by pointing out the timing of decline in sales and the lack of "other known exogenous forces" in the marketplace which would account for the plaintiff's decline in sales. Whether or not this explanation is believable is for the trier of fact to decide. Ultimately the effectiveness of the experts testimony will depend upon such considerations. However, it is not our function at this time to determine the weight to be given the expert's proposed testimony. It appears that Lehrer has taken into account the appropriate time factor, the possibility that sales of product could decline after a period of

2

time through no fault of the defendant and the fact that other marketplace forces could cause such a decline as well. Whether or not he did so in a convincing manner is for a jury to determine.

Defendant next complains that Dr. Lehrer erred in averaging the lost sales due to downloads and the expected average sales over thirty-nine months in calculating the loss in sales revenue due to NAFED's infringement. Defendant states: "Lehrer gives absolutely no basis as to why these figures are averaged." In a footnote defendant complains of Lehrer's evasive answers by explaining that when Dr. Lehrer was asked why these numbers were averaged he retorted: "That's why I divided by 2, because there's two numbers I'm adding together." (Defs.' Mem. Supp. Mot. Limine Exclude Expert Test. Dr. Lehrer at 9 (citing Lehrer Dep. at 136).) This is a very misleading argument for if one reads page 136 of the deposition it is clear that defense counsel never asked Dr. Lehrer to explain the theory on the basis of which he chose to average these two numbers. On the contrary, what counsel asked Dr. Lehrer was "Why do you divide by two there?" (Lehrer Dep. at 136.) It is in the process of explaining that he averaged two numbers that Lehrer states: "That's why I divided by 2, because there's two numbers I'm adding together." Thus, this statement is not an evasive answer to the question of why he chose to average the numbers. That question was never asked. Further, this statement quoted by defense counsel is only the last line of Lehrer's full answer. To take this line and not the rest of the answer and imply that this is the doctor's entire answer to a question that was never asked is bound, if not intended, to be misleading.

Defendant next argues that the court should bar all of Lehrer's testimony

3

concerning pass along damages because they are not actual losses. We agree. Lehrer's theory is that each person who downloaded plaintiff's product free from the NAFED web site would pass along free copies to at least two other persons thereby causing two more lost sales to the plaintiff. Although Lehrer's report contains much data on the incidence of pirating of software, nowhere is there any indication whatsoever that a person who purchases software is less likely to pass along illicit copies to others than one who downloads the software for free.[1] Therefore, this pass along "loss" would have been incurred had plaintiff sold all of the product it complains defendant illegally distributed for free. Or, as defendant put it, "In fact, the plaintiff would never have realized these sales even if the infringement did not occur." It is not the defendant's duty in this case to reimburse plaintiff for imperfections in the marketplace which plaintiff would ultimately have suffered whether or not infringement had taken place. The motion to bar all of Lehrer's testimony concerning pass along damages is granted.

Defendant also argues that Lehrer's opinion regarding losses due to delayed

---

[1] Dr. Lehrer does propose a rationale for such a distinction. (*See* Lehrer Dep. at 146.) However, his rationale is not based on any research specific to the industry. On the contrary, he attempts to extrapolate from other consumer bases without any foundation to indicate that such a comparison is valid. Furthermore, he makes no attempt, no doubt because he lacks sufficient data, to quantify the difference, if any does exist, in pass along losses resulting from giving the product away and that which would result from selling the product. Indeed, his only statistical support for determining the likely quantity of pass along losses is a study which purports to measure pass along losses resulting from the *sale* of product. This, of course, is not the situation we are faced with. In the final analysis Dr. Lehrer's justification for this measure of damages appears to depend more upon a layman's common sense quasi-psychological analysis of human nature than anything else. (*See id.*, line 12.) But, it would be just as reasonable to conclude that because a product was free, illegal pass along losses would vanish altogether. There would, after all, be no need to obtain the product from a secondary source if one could get the real thing for free from a public website. Indeed, in such a situation the number of free downloads may be both a measure of would be sales *and* pass along losses. At any rate, this kind of analytical guess-work is not to be confused with expert opinion founded upon valid research.

4

development of the product "FireCat" should be barred because it lacks any factual basis. Lehrer, defendant argues, assumes that "FireCat" should become a basic essential resource for training a majority of firefighters and fire departments without any investigation whatsoever. Insofar as Lehrer's report is concerned defendant is correct. There appears to be no factual basis given for this rather substantial conclusion. However, in reading Mr. Lehrer's deposition we find a number of statements, elicited by defense counsel's questions, which supply a basis for the challenged conclusion. He states that his support for this conclusion was a conversation with Mr. Green that the product was going to be an inexpensive way for training of students who were interested in taking and preparing for promotional examinations. (Lehrer Dep. at 95.) He further states that he knows that the use of "training-aided computer software" is an acceptable method of training individuals in the United States today. (*Id.*) Lehrer claims that firefighters prepare for examinations the same way everyone else does. He also states that according to Mr. Green the product has been sent to two companies who are willing to purchase it and sponsor it upon its completion. He admits however that he does not have any idea what the expenses of this controversy have been to plaintiff nor does he even know if the expenses have been more than the settlement money which plaintiff has already obtained from another defendant. (*Id.* at 116, 118, 119-20, 141.) He appears to be relying totally on Mr. Green's representations. For example, when asked about FireCat's release date he answered: "I asked that question to Mr. Green, because I thought that's a relevant question. He said, 'let me know when this litigation is over, how much it's going to cost and how much I recover; and I'll tell you how much money I have to pump into FireCat.'" (*Id.* at 158.) As far as how much work has actually been

5

done on FireCat, Mr. Lehrer could only state: "He's hired a programmer or two to take the appropriate steps to create this on-line teaching computer interactive software program." (*Id.* at 158.) Apparently Lehrer also relied upon some sort of projections made by Mr. Green of lost FireCat sales for the first year. (*Id.* at 162.) While Mr. Lehrer's research and analysis has been well short of spectacular, it is apparent that he does have a basis for the conclusions regarding the losses he attributes to the inability to develop the new software to the point of readiness to be marketed. If much of his basis for this conclusion is no more than information given to him by Mr. Green, then he is certainly vulnerable to cross examination as to the reliability of this data and his apparent failure to verify any of it at all. However, we are not prepared to say that his testimony is so speculative it must be barred. Most expert witnesses assume some facts as part of the underlying bases for their opinions. These assumptions often come from information given by the clients they represent or from testimony of fact witnesses or sometimes even the testimony of other experts. This does not constitute an unacceptable departure from standard practice - especially in a case such as this where the sources of the assumed facts are identified and are themselves available for cross examination. That estimating the amount of lost revenues from the failure to launch a totally new product is not a precise science goes without saying. It could be, that the product will be completely rejected by the consumer and never achieve a single sale. But precision in ascertaining damages is seldom possible and, at any rate, not required. A reasonable estimate is sufficient. The rest is for the jury. Lehrer's opinion constitutes a reasonable estimate

based upon the facts known to him.[2]

Finally, defendant also attacks Mr. Lehrer's opinion regarding loss of upgrades as lacking in any factual basis and directly contradicted by Mr. Green's deposition testimony. Lehrer defends his opinion regarding the losses due to failure to upgrade as follows: "We're in the initial or takeoff stages [of the product]. And when you're in the takeoff stage, like the steel industry was in the 1870's, you have to continue to enhance your product until it finds its niche in the marketplace." (*Id.* at 97.) Some of Lehrer's opinion seems to be based further on statistical studies of other upgrades, *id.* at 107, as well as on Mr. Bernstein's report and "one of these SPA documents which are on this table that talks about upgrades," *id.* at 168. Lehrer is entitled to base his opinion on reports and studies of others. However, if the testimony at trial is that the plaintiff never planned to upgrade his product for whatever reason, then the testimony regarding losses due to inability to upgrade the product will be barred.

**SO ORDERED**                               **ENTERED: July 9, 2001**

**HON. RONALD A. GUZMÁN**
**United States Judge**

---

[2]We note in reviewing his testimony that Mr. Lehrer, in sharp contrast to Mr. Saperstein, did on certain occasions, decline to express an opinion because it called for knowledge outside his area of expertise.

7